**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**LOUISE TRAUMA CENTER LLC,**

        Plaintiffs,

        v.

**UNITED STATES DEPARTMENT OF
HOMELAND SECURITY**,

        Defendant.

---

Case No. 1:20-cv-01128 (TNM)

**<u>MEMORANDUM OPINION</u>**

This is a FOIA case about FOIA.  Plaintiff Louise Trauma Center LLC submitted four FOIA requests to the Customs and Immigration Services (USCIS) about the agency's handling of a particular FOIA statutory provision and its related training for asylum officers.  After no response, the Center sued under FOIA.  The agency eventually produced thousands of pages but withheld some material under various FOIA exemptions.  The Center now challenges USCIS's response to two of the requests.  The matter is before the Court on cross-motions for summary judgment.  The Court will grant in part and deny in part both motions.

**I.**

The Center is a nonprofit organization "dedicated to raising awareness about immigrant women who have suffered from gender-based violence" and helping those women seek asylum here.  Compl. ¶ 5, ECF No. 1.  Between April 2018 and November 2019, the Center submitted four FOIA requests to USCIS.  *See generally* Compl.  Those four requests comprise one count each of the Center's current Complaint.  *See id.*  Specifically, the Center requested the following documents:

- *Count I* – "[L]abor agreements between [US]CIS and asylum officers" Compl. Ex. A;

- *Count II* – Any "studies, analyses, memoranda, information, instructions, reports, and documents concerning the" foreseeable harm requirement enacted by the FOIA Improvement Act of 2016, Compl. Ex. B;

- *Count III* – "[A]ll records concerning training given" to USCIS personnel about the FOIA Improvement Act, including any materials given to those personnel, Compl. Ex. C;

- *Count IV* – Copies of any "asylum officer lesson plans, materials, instructions, and guidance used during the class for new officers July 2019," Compl. Ex. D.

USCIS[1] received the requests and assigned numbers to them, but it failed to timely respond. So the Center sued. USCIS searched for responsive documents and produced thousands of pages. After these initial disclosures, the Center voluntarily dismissed Count III of its Complaint and affirmed that USCIS had fully responded to the FOIA request comprising Count I. *See* Joint Status Report, ECF No. 12.

 The two other requests were a different story. For Count II, USCIS determined that "FOIA training materials provided to FOIA processors and USCIS employees" would respond to the Center's request about the foreseeable harm requirement. Decl. of Jennifer Piateski ¶ 12, ECF No. 28-4 (Piateski Decl.). USCIS produced 1,104 pages, asserting exemptions for information on 600 of those pages. *See id.* ¶ 13. For Count IV, USCIS relied mainly on the agency's Electronic Reading Room,[2] which is a publicly accessible website containing asylum officer training materials. *See id.* ¶ 17.

USCIS moved for summary judgment in October 2020, *see* ECF No. 15, but the Center's opposition revealed that USCIS had too narrowly interpreted the request for lesson plans, *see*

---

[1]  The listed Defendant is the Department of Homeland Security, the parent agency of USCIS. But based on the record, USCIS employees conducted the searches and resolved the Center's requests. So when describing actions of the Defendant, the Court will refer to USCIS, not the Department.

[2]  Available at https://www.uscis.gov/records/electronic-reading-room.

Mot. to Stay, ECF No. 19.  USCIS conducted a broader search and released 3,480 pages to the Center, on which USCIS asserted multiple FOIA exemptions.  *See* Piateski Decl. ¶ 20.  The Court ordered a new round of briefing to avoid piecemeal challenges.  *See* Min. Order, Jul. 16, 2021.

Both parties now move for summary judgment.  *See* Def.'s Mot. for Summ. J., ECF No. 28-2 (Def.'s MSJ); Pl.'s Cross-Mot. for Summ. J., ECF No. 29-1 (Pl.'s MSJ).  To catalog its asserted exemptions, USCIS provides *Vaughn* Indices—one covers the agency's original disclosures for Count II, *see* ECF Nos. 28-5 and 28-6 (First VI), and the other covers the agency's supplemental disclosures for Count IV, *see* ECF No. 28-7 (Second VI).  The motions for summary judgment are ripe for decision.[3]

## II.

To prevail on a motion for summary judgment, a party must show that "there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  Courts decide "the vast majority" of FOIA cases on motions for summary judgment.  *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).

FOIA generally requires "disclosure of documents held by a federal agency unless the documents fall within one of nine enumerated exemptions, which are listed at 5 U.S.C. § 552(b)."  *U.S. Fish and Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021).  An agency receiving a request "must conduct a search reasonably calculated to uncover all relevant documents and, if challenged, must demonstrate beyond material doubt that the search was reasonable."  *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990) (cleaned up).  And an agency claiming an exemption bears the burden to show its applicability to the withheld

---

[3]  The Court has jurisdiction under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

information.  *See ACLU v. DOD*, 628 F.3d 612, 619 (D.C. Cir. 2011).  Courts review those

determinations de novo.  *See King v. DOJ*, 830 F.2d 210, 217 (D.C. Cir. 1987).

To meet its burdens, an agency may rely on affidavits.  *See Shapiro v. DOJ*, 893 F.3d

796, 799 (D.C. Cir. 2018).  Those affidavits receive "a presumption of good faith."  *SafeCard

Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).  The Court may grant summary

judgment based on the agency's affidavits alone if they are not contradicted by record evidence

or by evidence of bad faith.  *See Aguiar v. DEA*, 865 F.3d 730, 734–35 (D.C. Cir. 2017).

### III.

Before reaching the merits of the Counts at issue, the Court handles a preliminary matter.

The Center seeks summary judgment on Counts I and III—which the Center itself has

abandoned—because USCIS did not respond within the allotted time.  *See* Pl.'s MSJ at 5, 15.[4]

According to the Center, USCIS "is liable for fees and costs as a result."  *Id.* at 5, 15.

The Center forgets its prior assertions and the general sequence of FOIA lawsuits.  The

Court cannot grant summary judgment on claims that the plaintiff has jettisoned.  Here, the

Center affirmatively dismissed Count III.  *See* Joint Status Report at 2, ECF No. 10.  The Center

also said that USCIS had "complied in full" with Count I.  *Id.* at 1.  That admission entitles

USCIS, not the Center, to summary judgment on that Count.  More, courts award attorney's fees

only a FOIA plaintiff who has "substantially prevailed," 5 U.S.C. § 552(a)(4)(E)(i), implying

that the Court considers a motion for attorney's fees *after* deciding summary judgment.  *See, e.g.*,

*Davy v. CIA*, 550 F.3d 1155, 1157–58 (D.C. Cir. 2008) (deciding motion for attorney's fees after

motion for summary judgment).

---

[4]  All page citations refer to the pagination generated by the Court's CM/ECF system.

Thus, the Court will not consider the Center's request for fees.  The Court will deny the Center's motion as to Counts I and III.  And based on the Center's representations, the Court will dismiss Count III.

*   *   *

Moving to Counts II and IV, the Center first challenges the adequacy of USCIS's searches.  The adequacy of a search does not turn on "whether there might be" more uncovered documents.  *Kowalczyk v. DOJ*, 73 F.3d 386, 388 (D.C. Cir. 1996).  A search instead is adequate if the agency shows that the search method "was reasonably calculated to uncover all relevant documents."  *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  The agency can carry its burden through affidavits "setting forth the search terms and the type of search performed[ ] and averring that all files likely to contain responsive materials . . . were searched[.]"  *Id.*  But "[i]f the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper."  *Kowalczyk*, 73 F.3d at 388 (cleaned up).

The Court addresses the two searches in turn.

### A.

*First*, the search at issue in Count II.  Recall that the Center requested copies of all "studies, analyses, memoranda, information, instructions, reports, and documents concerning" foreseeable harm from disclosure.  Compl. Ex. B at 2.  This request requires some background.  "Foreseeable harm" is a FOIA term of art.  Under a 2016 amendment to FOIA, an agency may not withhold otherwise exempt information unless the agency "reasonably foresees that disclosure would harm an interest protected by" a FOIA exemption.  5 U.S.C. § 552(a)(8)(A)(i)(I).  The Center submitted its request to learn how USCIS, when responding to

a FOIA request, "foresee[s] that harm will result from" disclosure and on what information, if any, the agency relies for that determination.  Compl. Ex. B at 2.

USCIS decided that "[b]ecause [the agency] does not conduct studies about the FOIA and its application of foreseeable harm," "the only records reasonably likely to discuss" the foreseeable harm standard were FOIA training materials provided to USCIS personnel.  Piateski Decl. ¶ 12.  USCIS then searched the agency's training repository for responsive documents.  *See id.* ¶ 14.  The Center argues that USCIS should have searched more broadly, though it does not say where.  Instead, the Center presents several rhetorical questions challenging the search.  *See* Pl.'s MSJ at 11 ("DHS did no analysis whatsoever of the new law?  DHS wrote no memoranda or reports about the new law?  DHS received no analysis or memoranda from anyone, concerning the new law?").  The Court rejects the arguments implied by those questions—the adequacy of a search does not turn on whether there might be more documents.  *See Kowalczyk*, 73 F.3d at 388.  In any event, parties cannot succeed using rhetorical flourishes alone.

The Court agrees with the Center on other grounds, however.  USCIS limited its search to FOIA training materials on the premise that the agency conducts no studies about FOIA.  *See* Piateski Decl. ¶ 12.  Yet the Center also requested "analyses, memoranda, instructions, reports, and documents[.]"  Compl., Ex. B at 2.  The request thus facially includes documents beyond formal studies.  But USCIS "does not say it searched for these items."  Pl.'s MSJ at 9.  More, that USCIS does not conduct studies does not mean that no USCIS employee has responsive documents "concerning" FOIA's foreseeable harm requirement.  Compl., Ex. B at 2.  That is reason not to limit a search to FOIA training materials.

USCIS responds that Count II as written in the Complaint refers only to "Studies about Harm."  Def.'s Opp'n and Reply at 4, ECF No. 35 (Def.'s Reply).  True, that is the Count's title.

*See* Compl. at 3.  But Count II also includes verbatim the request's language for more than studies.  *See id.* ¶ 14.  And the contents of the Complaint do not overturn the well-established maxim that the agency must read the *request* "as drafted, not as either agency officials or [the requester] might wish it was drafted."  *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984).  Indeed, it appears that USCIS simply overlooked all words in the request that followed "studies." That was an error.

Because the record leaves substantial doubt as to the adequacy of USCIS's search for records in Count II, the Court will deny USCIS's motion for summary judgment and will grant the Center's motion as to that search.

**B.**

*Second*, the search at issue in Count IV.  There, the Center requested "all asylum officer lesson plans, materials, instructions, and guidance used during the class for new officers [in] July 2019."  Compl. ¶ 24.  Recall that USCIS originally directed the Center to the agency's Electronic Reading Room for asylum officer lesson plans.  *See* Piateski Decl. ¶ 16.  But USCIS also reviewed documents not posted there and released 109 other pages.  *See id.*  And one of USCIS's divisions, the Refugee Asylum and International Division (confusingly abbreviated RAIO), performed "an electronic search for training materials."  *Id.* ¶ 17.  Upon the first round of summary-judgment briefing, however, USCIS realized that its components had "inadvertently" misinterpreted the request to encompass only lesson plans.  *Id.* ¶ 19.  USCIS then conducted a broader search and identified "an additional 3,480 pages of responsive records."  *Id.* ¶ 20.

But the declaration gives few details on the parameters or methods of that second search. The declaration says that RAIO also conducted the second search.  *See id.*  At most, the Court can reasonably infer that RAIO used the same method—an electronic search for training

materials—as before.  But USCIS nowhere "set[s] forth the search terms and the type of search performed."  *Oglesby*, 920 F.2d at 68.  It merely states the search's results and who performed it. Because USCIS's declaration gives "no information about [its] search strategies," *Morley v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir. 2007), nor says "how [RAIO] searched within" the presumably electronic database, *Aguiar*, 865 F.3d at 738, the agency gives no information "specific enough . . . to challenge the procedures utilized."  *Weisberg v. DOJ*, 627 F.2d 365, 371 (D.C. Cir. 1980).

Thus, the agency has not carried its burden, and the Court will grant the Center's motion for summary judgment as to that search.

## IV.

The Court now turns to the exemptions asserted by USCIS.  Across its productions, the agency withheld information under Exemptions 3, 5, 6, 7(C), and 7(E).  Recall that "[a]gencies may carry their burden of proof through declarations explaining why a FOIA exemption applies."  *Knight First Amdt. Inst. at Columbia Univ. v. CIA*, 11 F.4th 810, 818 (D.C. Cir. 2021).

Recall too FOIA's foreseeable harm requirement.  The D.C. Circuit requires agencies to articulate the harm from disclosure in a "focused and concrete way."  *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021); *see also Reps. Comm. for Freedom of the Press v. CBP*, — F. Supp. 3d —, No. 18-cv-155 (TNM), 2021 WL 4843970, at *3–*4 (D.D.C. Oct. 18, 2021) (surveying caselaw).  But even without a sufficient explanation from the agency, the "context and purpose" of withheld information can support a finding of foreseeable harm. *Reps. Comm. v. FBI*, 3 F.4th at 369.  And as this Court explained more fully in *Reporters Committee v. CBP*, agencies may more easily meet their foreseeable harm burden when invoking

exemptions "for which the risk of harm through disclosure is more self-evident."  2021 WL 4843970, at *12.

 With these principles in mind, the Court addresses USCIS's invocation of the various exemptions.  The Center does not challenge the withholdings under Exemption 3.  *See* Pl.'s MSJ at 12.  So the Court addresses the other asserted exemptions.

**A.**

 Exemption 5 protects from disclosure any records "that would not be available by law to a party . . . in litigation with the agency."  5 U.S.C. § 552(b)(5).  Put simply, a FOIA requester cannot obtain by FOIA what the requester could not obtain through discovery in a lawsuit against the agency.  *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).  Exemption 5 thus imports into FOIA a variety of common law privileges.  USCIS relies here on the deliberative process privilege and the attorney work-product privilege.

**1.**

 The deliberative process privilege shields from disclosure the advisory opinions, recommendations, and deliberations that comprise some part of a process through which the agency formulates decisions and policies.  *See id.* at 150.  To qualify, information must be predecisional and deliberative.  *See Sierra Club*, 141 S. Ct. at 786.  A document is predecisional when generated before the agency's final decision on the matter to which the document relates. *See id.*  And a document is deliberative if prepared as "part of the agency give-and-take of the deliberative process by which" the agency made its decision.  *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975).

 USCIS falls well short of its burden to assert the privilege.  The agency says that an internal review considered the withheld information to be predecisional.  *See* Def.'s Stmt of

9

Material Facts ¶ 47, ECF No. 28-3 (Def.'s SOMF).  That does not help the Court, which "must be able to pinpoint an agency decision or policy to which the" information contributed.  *Senate of the Cmnwlth of P.R. v. DOJ*, 823 F.2d 574, 585–86 (D.C. Cir. 1987) (cleaned up).  USCIS identifies no such decision, nor can the Court glean one from its filings.

The agency says that the information is deliberative because it "reflect[s] recommendations and deliberations comprising various processes by which DHS decisions and policies were formulated."  Def.'s SOMF ¶ 46.  Again, that is not enough.  The agency says nothing about "what deliberative process is involved" or the "role the [withheld information] played in" that process.  *Jud. Watch, Inc. v. DOJ*, 20 F.4th 49, 56 (D.C. Cir. 2021) (cleaned up).  The Court cannot fill in those details, nor can it credit boilerplate language that merely reformulates the language of the exemption.

And even if USCIS had properly asserted the privilege, it has failed to adequately explain the foreseeable harm from disclosure.  Indeed—ironically given that this case is about foreseeable harm—USCIS has barely explained that harm at all.  Only one paragraph in the agency's declaration discusses foreseeable harm and says simply that the agency's FOIA personnel conducted a foreseeable harm analysis.  *See* Piateski Decl. ¶ 40.  The *Vaughn* Index goes slightly further, asserting that disclosure would "chill or deter USCIS employees from engaging in [ ] candid and frank discussions."  *See* First VI at 5–7; Second VI at 63–64, 68.

The D.C. Circuit has rejected almost identical assertions of harm as too "boilerplate and generic" to justify withholding under the deliberative process privilege.  *See Reps. Comm. v. FBI*, 3 F.4th at 371.  So too here.  More, USCIS contradicts recent guidance from the Attorney General, who emphasized that agencies should not withhold information "unless the agency can

identify a foreseeable harm or legal bar to disclosure."  Mem. from Att'y Gen. Merrick Garland to Heads of Exec. Dep'ts and Agencies 1 (Mar. 15, 2022).[5]

For these reasons, USCIS has not carried its burden to assert the deliberative process privilege.  The Court will grant summary judgment to the Center on those withholdings and will order USCIS to produce the unredacted materials.

## 2.

Next, the attorney work-product privilege, which "provides a working attorney with a 'zone of privacy' within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 864 (D.C. Cir. 1980).  Under this privilege, FOIA exempts from disclosure materials prepared by an attorney in anticipation of litigation.  *See Nat'l Ass'n of Crim. Def. Lawyers v. DOJ EOUSA*, 844 F.3d 246, 250–51 (D.C. Cir. 2016).

USCIS asserted the work-product privilege for "an immigration [trial] attorney's notes about a case" that were prepared in anticipation of litigation.  *See* First VI at 8–9.  The Center, without citing precedent, disputes the privilege's applicability because "there is no attorney involved here" and asylum officers "do not litigate."  Pl.'s MSJ at 12.

The Center's responses misstate the focus of the inquiry and the role of the challenged document.  True, asylum officers do not themselves litigate.  That fact does not preclude lawyers, however, from presenting work product during asylum officer training, as happened here.  *See* First VI at 8 (labeling withheld information as "Sample of Attorney Work Product for FOIA training purposes").  After all, a document "can contain protected work-product material

---

[5] Available at https://www.justice.gov/ag/page/file/1483516/download.

even though it serves multiple purposes[.]" *United States v. Deloitte LLP*, 610 F.3d 129, 138 (D.C. Cir. 2010).

On foreseeable harm, the agency's explanation provides little clarity. But the "context and purpose" of attorney work product makes self-evident the harm from its disclosure. *Reps. Comm. v. FBI*, 3 F.4th at 369. Like the attorney-client privilege, the work-product privilege "holds a prominent and sacrosanct role in the law." *Reps. Comm. v. CBP*, 2021 WL 4843970, at *13. Attorneys rely on the privilege to "faithfully protect[ ] the rightful interests of [their] clients." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947). Disclosure of work product thus would create "[i]nefficiency, unfairness[,] and sharp practices," all of which "poorly serve[ ]" the interests of justice. *Id.* at 511. For these reasons, the record shows that disclosure of the work product withheld by USCIS would create foreseeable harm. *Accord Machado Amadis v. DOJ*, 388 F. Supp. 3d 1, 20 (D.D.C. 2019) (finding agency's concern about potential chilling effect of disclosure of attorney work product sufficient to show foreseeable harm), *aff'd*, 971 F.3d 364 (D.C. Cir. 2020).

Because USCIS has properly invoked the attorney work-product privilege and has established foreseeable harm from disclosure, the Court will grant USCIS summary judgment as to those withholdings.

## B.

Exemptions 6 and 7(C) are closely related. Each exemption allows an agency to withhold personal information when disclosure would constitute an invasion of personal privacy. *See* 5 U.S.C. § 552(b)(6), (b)(7)(C). But the exemptions differ in language and in applicability—Exemption 7(C) applies only to law enforcement records, and Exemption 6 covers all "personnel

and medical files." *Id.* § 552(b)(6); *see Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 165–66 (2004).

USCIS relied on both exemptions to withhold "names and other personal information" of third parties mentioned in the responsive records.  Def.'s SOMF ¶ 54; *see also id.* ¶ 63.  The Center challenges only USCIS's withholding of the names of "experts [ ] brought in to teach asylum officers[.]"  Pl.'s MSJ at 12.  USCIS withheld those names under Exemption 6.  *See* Second VI at 70–71.  So the Court need not analyze 7(C).

Under Exemption 6, the Court first determines "whether disclosure would compromise a substantial, as opposed to *de minimis*, privacy interest."  *Prison Leg. News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015) (cleaned up).  If so, the Court balances the individual's privacy right "against the public interest in disclosure."  *Id.*  "[T]he only relevant public interest" is the extent to which disclosure would "let citizens know what their government is up to."  *DOD v. FLRA*, 510 U.S. 487, 497 (1994) (cleaned up).

The Court has no problem finding a significant privacy interest here.  The D.C. Circuit has said that "the privacy interest of an individual in avoiding the unlimited disclosure of his or her name . . . is significant."  *NARFE v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989).  On the other side of the balance, the Center asserts—again without citation—that "[t]he public has the right to know who gives trainings."  Pl.'s MSJ at 12.  The Court disagrees.  Who the agency brings in to train asylum officers sheds little information on the agency's "performance of its statutory duties."  *FLRA*, 510 U.S. at 497 (cleaned up).  To be sure, the *content* of those trainings might be relevant to agency performance.  But Exemption 6 protects only names here.  And the Center has not otherwise argued for a public interest in disclosure.  Thus, Exemption 6 applies to the withheld names.

On foreseeable harm, USCIS says that disclosure of the trainers' names would subject them to "harassment for providing assistance to USCIS."[6]  Second VI at 70.  "These predicted results of disclosure are exactly what" Exemption 6 seeks to prevent.  *Ecological Rts. Found. v. EPA*, 541 F. Supp. 3d 34, 65–66 (D.D.C. 2021); *see Amiri v. NSF*, No. 20-cv-2006 (TNM), 2021 WL 4438910, at *13 (D.D.C. Sept. 28, 2021).  The nature of this personal information thus shows a risk of foreseeable harm.

The Court will grant USCIS summary judgment as to its withholding under Exemption 6 of trainers' names.

## C.

Exemption 7(E) permits withholding of "information compiled for law enforcement purposes" when disclosure would reveal "techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  This exemption "sets a relatively low bar" to justify withholding of material; the agency need only "demonstrate logically how the release of the requested information might create a risk of circumvention of the law."  *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011).  Any information that "could increase the risks that a law will be violated" will be protected from disclosure.  *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009).

Before analyzing the merits, a note about foreseeable harm.  As this Court has explained, Exemption 7(E) "by its own terms" requires an agency to show a foreseeable harm from disclosure: that disclosure would risk circumvention of the law.  *Reps. Comm. v. CBP*, 2021 WL

---

[6]  This plain text of the *Vaughn* Index rebuts the Center's response that USCIS "does not allege the trainers would suffer any harm" from disclosure or "would be harassed."  Pl.'s MSJ at 13.

4843970, at *19; *cf. Pub. Emps. for Enviro. Resp. v. U.S. Section, Int'l Boundary and Water Comm'n (PEER)*, 740 F.3d 195, 202 (D.C. Cir. 2014) ("To fall within Exemption 7(E) or 7(F), release of a record also must threaten a particular harm."). So proper invocation of 7(E) "go[es] a long way to show the risk of foreseeable harm." *Reps. Comm. v. CBP*, 2021 WL 4843970, at *19.

USCIS invoked Exemption 7(E) to withhold "law enforcement codes in systems that are used to check a person's status"; "coding or law enforcement information contained in the TECS system"; and "techniques used to review, investigate, and adjudicate immigration applications with national security concerns." Def.'s SOMF ¶¶ 78, 80, 81. The Center challenges only the last category, *see* Pl.'s MSJ at 13, which comprises a large portion of USCIS's overall withholdings.[7]

A threshold question for Exemption 7(E) is whether the withheld records were "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7)(E). The term "law enforcement" in the exemption "refers to the act of enforcing the law, both civil and criminal." *PEER*, 740 F.3d at 203. And documents that "serve security purposes" qualify as law enforcement records. *Id.* at 204.

---

[7] Littered throughout the Center's briefings are conclusory assertions about how USCIS has violated the law. *See, e.g.*, *id.* at 14 ("It is a violation of FOIA to give the requester a *Vaughn* Index that describes records that were not responsive."); 17 ("It violates the FOIA to send the requester on a wild goose chase that wastes his time."). More, the Center often poses rhetorical questions that imply arguments but do not explicitly state them. *See, e.g.*, *id.* at 20 ("Which were given to the July 2019 officers, and which were not?"). These snippets do not help the Center's case. "It is not enough to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990). The Center should clearly state its arguments and provide relevant caselaw as support, something the Center has largely failed to do.

Records compiled by asylum officers fulfill those characteristics.  Federal law empowers asylum officers to interview applicants for asylum and enforce immigration laws by adjudicating those applications.  *See* 8 C.F.R. §§ 208.9, 208.14.  Those decisions also implicate national security—federal law requires denial of asylum to anyone who presents "a danger to the security of the United States."  8 U.S.C. § 1158(b)(2)(A)(v).  So USCIS may assert Exemption 7(E) for asylum officers' records.  *See Rojas-Vega v. USCIS*, 132 F. Supp. 3d 11, 19 (D.D.C.), *aff'd,* 650 F. App'x 36 (D.C. Cir. 2015).

What USCIS withheld in this case—training material—informs an asylum officer's duties.  Those documents teach future officers how to investigate and assess an applicant.  The documents therefore assist asylum officers in protecting national security and "serve [a] security purpose[ ]," *PEER*, 740 F.3d at 204.  They thus qualify as law enforcement records under 7(E).

The Court turns next to whether USCIS properly invoked the exemption.  For the 7(E) withholdings at issue, USCIS offers the following explanation:

> This information reveals the types of information that investigators and officers analyze in adjudicating immigration applications, which are part of specific guidelines and procedures involved in the enforcement of immigration and national security laws and directives.  The disclosure of this information would reveal procedures for the enforcement of immigration and national security laws and could reasonably be expected to risk the circumvention of law as applicants would know what type of information is relative[8] to approvals or denials of applications.

> *See, e.g.*, Second VI at 10.

The Court has reviewed the *Vaughn* Index given this explanation.  In large part, the Court agrees with USCIS's invocation of 7(E).  The agency withheld information related to sensitive techniques used by asylum officers to conduct interviews and consider applications.  For

---

[8]  Given surrounding context, USCIS meant to say "relevant" and not "relative."  The Court treats the explanation as such.

example, USCIS withheld information about "what an officer will consider in evaluating the demeanor of an applicant" and "the [applicant's] candor and responsiveness[.]"  Second VI at 12. Potential bad actors armed with such knowledge could use it to game asylum interviews and circumvent immigration law.  Similarly, USCIS withheld a bevy of material about how asylum officers should evaluate an applicant's involvement with terrorist organizations.  *See* Second VI at 22–29.  Terrorists could make great use of such information.

The rest of USCIS's withholdings follow a similar path.  USCIS withheld sensitive internal techniques like "how asylum officers analyze" an applicant's "corroborating evidence," *id.* at 49, and nationality, *see id.* at 52.  USCIS also withheld various training exercises and mock interviews, *see id.* at 79, 86, 88, 89.  In sum, disclosure of this information would give those trying to illegally enter the country a glimpse of how to do so through the asylum process.  The information therefore "could increase the risks" that someone will violate immigration law. *Mayer Brown*, 562 F.3d at 1193.

The Center's counterarguments are unavailing.  The Center argues that the withheld information does not constitute techniques or procedures.  *See id.* at 29.  As to that argument, the Center either misreads or does not read the *Vaughn* Index.  At points, the Index is clear that USCIS withheld "techniques," Second VI at 6.  The other withheld information explains how an asylum officer does his job.  *See, e.g.*, *id.* at 25 (withholding guidance "about how to analyze whether something qualifies as a terrorist activity"); 85 (withholding case study used to show application of "certain skills and techniques").  If those are not techniques, what is?

The Center also says that USCIS has not identified the withheld techniques.  *See* Pl.'s MSJ at 13, 26, 28, 29.  True, an agency must give some explanation of the procedures involved and withheld.  *See CREW v. DOJ*, 746 F.3d 1082, 1102 (D.C. Cir. 2014) (holding insufficient a

declaration that described withheld material as merely "procedures and techniques used by FBI agents during the investigation"). On its own review, however, the Court finds that the *Vaughn* Index adequately describes what techniques USCIS withheld. And the Center does not challenge any specific *Vaughn* Index entries as vague on this point.

The Center likewise contends that USCIS fails to show that the withheld techniques are unknown to the public. *See* Pl.'s MSJ at 13, 30. Yet 7(E) applies if disclosure of "even commonly known procedures could reduce or nullify their effectiveness." *Elec. Frontier Found. v. DOJ*, 384 F. Supp. 3d 1, 10 (D.D.C. 2019) (cleaned up). Recall that disclosure of how asylum officers make their decisions would reduce the officers' abilities to effectively enforce immigration laws. *Accord Sack v. DOJ*, 823 F.3d 687, 694–95 (D.C. Cir. 2016) (upholding nondisclosure when reports identified deficiencies in polygraph procedures that "could enable criminal suspects, employees with ill intentions, and others to subvert polygraph examinations").

Beyond these arguments, the Center disputes USCIS's withholding by pointing to other documents in the public domain. *First*, the Center asserts that USCIS has waived its right to assert exemptions on lesson plans because courts have invalidated some lesson plans. *See* Pl.'s MSJ at 21–22 (citing *Grace v. Barr*, 965 F.3d 883 (D.C. Cir. 2020) and *Kiakumbua v. Wolf*, 498 F. Supp. 3d 1 (D.D.C. 2020)). Yet the Center never says those invalidated lesson plans are at issue here. And the Court knows of no precedent supporting such a waiver rule, nor does the Center provide one.

*Second*, the Center questions certain withholdings because they resemble USCIS lesson plans currently in the public domain. *See id.* at 33–35. The Center never suggests, however, that the public information "duplicate[s] [the material] being withheld" now. *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983). The Center bears that burden, *see Davis v. DOJ*,

968 F.2d 1276, 1279 (D.C. Cir. 1992), and must do more than ask rhetorical questions to carry it, *see* Pl.'s MSJ at 33 ("What is different about the contents of each?").

Relatedly, the Center says in its cross-motion that USCIS has already released in full three lesson plans originally withheld here. *See id.* at 24–26.  USCIS later disclosed two of those plans to the Center.  *See* Def.'s Reply, Ex. A, ECF No. 36-1.  But USCIS made no supplemental disclosure of the third plan, entitled *Analyzing the Persecutor Bar*.  For at least one page, that was erroneous.  The Center correctly points out that page 39 of that plan resides in the public domain.[9]  USCIS must release that page.  *See Davis*, 968 F.2d at 1279 ("[T]he government cannot rely on an otherwise valid exemption claim to justify withholding information that . . . is in the public domain." (cleaned up)).

In sum, the Court holds that Exemption 7(E) applies to all but one page of the withholdings at issue.  That goes a long way to show foreseeable harm.  *See Reps. Comm. v. CBP*, 2021 WL 4843970, at *19.  Indeed, that harm is "self-evident," *id.* at *12—disclosure of how asylum officers perform their duties will help bad actors gain access to the country.  In short, disclosure "would serve to make the country less safe."  Def.'s Reply at 11.  The agency has therefore met its burden on foreseeable harm.

Thus, USCIS need only disclose the one identified page.  Otherwise, the Court will grant USCIS summary judgment on its withholdings under Exemption 7(E).

### D.

To properly assert exemptions, USCIS must also "demonstrate that all reasonably segregable material has been released."  *Johnson v. EOUSA*, 310 F.3d 771, 776 (D.C. Cir. 2002).

---

[9]  The unredacted page is available at page 286 of the file located at https://www.aila.org/File/Related/18022100_Part4.pdf.

To meet this burden, the agency can rely on the combination of its declarations and *Vaughn* Indices. *See id.* The agency is also "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). To overcome that presumption, the Center must provide a "quantum of evidence." *Id.*

USCIS admittedly does not say much on segregability. The agency's FOIA Office reviewed the processed records and "determined that no further segregation of meaningful information . . . would be possible without disclosing" protected information. Piateski Decl. ¶ 40. The Center doubts the adequacy of that statement, calling it a "blanket declaration of nonsegregability." Pl.'s Reply at 9, ECF No. 36. The Center overlooks, however, that USCIS affirmed in each entry of the *Vaughn* Index that "[a]ll other information was segregated and determined non-exempt and disclosed." *See generally* First VI, Second VI. Those representations, "in conjunction with" the declaration, are enough to carry the agency's burden. *See Jud. Watch, Inc. v. DOJ*, 20 F. Supp. 3d 260, 278 (D.D.C. 2014). And the Center's response does not offer any evidence to overcome the combined representations of the declaration and the Index.

The Court holds that USCIS has fulfilled its segregability obligation.

**V.**

For these reasons, the Court will partially grant the Defendant's Motion for Summary Judgment and the Center's Motion for Summary Judgment. A separate Order will issue.

Dated: April 11, 2022
                                            TREVOR N. McFADDEN, U.S.D.J.