UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LOUISE TRAUMA CENTER LLC,

        Plaintiff,

   v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,

        Defendant.

Civil Action No. 20-1128 (TNM)

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS

Dated: March 23, 2023
      Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:       /s/*Fithawi Berhane*
     FITHAWI BERHANE
     Assistant United States Attorney
     601 D Street, NW
     Washington, DC 20530
     (202) 252-6653
     Fithawi.Berhane@usdoj.gov

*Attorneys for the United States of America*

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 1

I.      PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE
        GRANTED…………………………………………………………………..…………….2

II.     PLAINTIFF'S HOURLY RATE IS UNREASONABLE ………………………..………4

        A.      Plaintiff's Work In This FOIA Case Was Not "Complex".................................... 4

        B.      Plaintiff's Motion Fails To Present Evidence That Lawyers Collect Attorney's Fees
                For Similar Services At The Laffey Matrix Rates Requested By Plaintiff............. 6

                1.      Plaintiff Fails To Provide Affadavits Reciting The Precise Fees That
                        Attorneys With Similar Qualifications Have In Fact Received From Fee-Paying
                        Clients In Comparable Cases…………………………………………………..7

                2.      Plaintiff Fails To Provide Evidence Of Recent Fees Awarded To The Court
                        Or Through Settlement To Attorneys With Comparable Qualfiications Handling
                        Similar Cases………………………………………………………………..9

        C.      Rates From The 2022 Fitzpatrick Matrix Most Accurately Reflect The Market For
                Complex Federal Litigation Generally And Are Superior To Those Underlying
                The LSI *Laffey* Matrix ....................................................................................... 10

III.    THE NUMBER OF HOURS PLAINTIFF CLAIMS TO HAVE SPENT ON THIS CASE
        IS UNREASONABLE………………………………………………………..…………11

        A.      Plaintiff's Billing Records Contain Considerable Evidence of Needless And/Or
                Duplicative Work................................................................................................. 12

        B.      Plaintiff's Billing Records Are Insufficiently Descriptive ................................... 14

CONCLUSION.................................................................................................................. 13

## TABLE OF AUTHORITIES

**Cases**

*12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd*,
   316 F. Supp. 3d 22 (D.D.C. 2018) .................................................................. 2

*Abtew v. Dep't of Homeland Sec.*,
   No. 13-1566, 2014 WL 2620982 (D.D.C. 2016) .......................................... 8

*Bd. of Trs. Of Hotel & Rest. Emps. Local 25 v. JPR, Inc.*,
   136 F.3d 794 (D.C. Cir. 1998) ....................................................................... 2

*Borum v. Brentwood Vill., LLC*,
   No. CV 16-1723 (RC), 2020 WL 5291982 (D.D.C. Sept. 4, 2020) ........... 2

*Cerjan v. Fasula*,
   539 F. Supp. 1226 (N.D. Oh. 1981) .............................................................. 8

*Conservation Force v. Jewell*,
   160 F. Supp. 3d 194 (D.D.C. 2016) ........................................................ 1, 13

*Conservation Force v. Salazar,*
   916 F.Supp.2d 15 (D.D.C.2013) .................................................................. 14

*Copeland v. Marshall*,
   641 F.2d 880 (D.C. Cir. 1980) ..................................................................... 13

*Covington v. District of Columbia*,
   57 F.3d 1101 (D.C. Cir. 1995) ................................................................... 6, 9

*Cox v. District of Columbia, Cox,*
   264 F. Supp. 3d (D.D.C. 2017) ..................................................................... 5

*CREW v. U.S. Dep't of Homeland Sec.*,
   No. 08–1046, 2010 WL 8971920 (D.D.C. Apr. 21, 2010) ......................... 14

*DL v. District of Columbia*,
   924 F.3d 585 (D.C. Cir. 2019) ..................................................................... 10

*Elec. Priv. Info. Ctr. v.U.S. Dep't of Homeland Sec. II ("EPIC II")*,
   218 F. Supp. 3d 27 (D.D.C. 2016) ................................................................ 2

*Eley v. District of Columbia*,
   793 F.3d 97 (D.C. Cir. 2015) .................................................................. 4, 6, 9

*English v. Washington Metro. Area Transit Auth.*,
   323 F.R.D. 1 (D.D.C. 2017) ........................................................................... 2

*Environmental Defense Fund, Inc. v. Reilly,*
   1 F.3d 1254 (D.C. Circ. 1993) ..................................................................... 12

*EPIC v. DHS*,
   982 F. Supp. 2d 56 (D.D.C. 2013) ............................................................... 12

*Gatore v. Dep't of Homeland Sec.*,
   286 F. Supp. 3d 25 (D.D.C 2018) ................................................................. 8

*Henao v. Smiths Detection, Inc.*,
   No. 18-cv-2564, 2019 WL 2476631 (D.D.C. June 13, 2019) ...................... 2

*J.T. v. District of Columbia*,
   No. 19-CV-989 (BAH), 2023 WL 355940 (D.D.C. Jan. 23, 2023) ...... 10, 11

*Judicial Watch, Inc. v. U.S. Dep't of Justice*,
   878 F. Supp. 2d 225 (D.D.C. 2012) .............................................................. 1

*Mattachine Soc'y of Washington, DC v. U.S. Dep't of Justice*,
   406 F. Supp. 3d 64 (D.D.C. 2019) .............................................................. 10

*Michigan v. Envtl. Prot. Agency,*
  254 F.3d 1087 (D.C.Cir.2001) ............................................................ 15
*Miller v. Holzmann,*
  575 F. Supp. 2d 2 (D.D.C. 2008) ...................................................... 15
*Nat'l Ass'n of Concerned Veterans v. Sec'y of Def,*
  675 F.2d 1319 (D.C. Cir. 1982) ........................................................ 5, 7
*Platt v. District of Columbia,*
  168 F. Supp. 3d 253 (D.D.C. 2016) ................................................... 5
*Reed v. District of Columbia,*
  843 F.3d 517 (D.C. Cir. 2016) .......................................................... 4, 5
*Role Models America, Inc. v. Brownlee,*
  353 F.3d 962 (D.C. Circ. 2004) ........................................................ 14
*U.F. v. District of Columbia,*
  No. 19-2164 (BAH), 2020 WL 4673418 (D.D.C. Aug. 12, 2020) ......................... 9
*U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc,*
  786 F. Supp. 2d 110 (D.D.C. 2011) .................................................. 15
*Walker v. District of Columbia,*
  317 F.R.D. 600 (D.D.C. 2016) .......................................................... 2
*Webster v. U.S. Dep't of Just.,*
  No. CV 02-603 (RC), 2021 WL 4243414 (D.D.C. Sept. 17, 2021) ......................... 9
*Weisberg v. Dep't of Justice,*
  745 F.2d 1476 (D.C. Circ. 1984) ....................................................... 2

**INTRODUCTION**

Defendant, the United States Department of Homeland Security, opposes Plaintiff, Louise Trauma Center, LLC's Motion for Attorney's Fees And Costs ("Motion") filed on January 14, 2023, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. ECF No. 54 ("Pl.'s Mot."). Plaintiff demands $223,868.00 in attorney's fees, with $402.00 in costs. *Id.* at pg. 1. Plaintiff's requested attorney's fees award includes a $19,640.00 demand for "fees upon fees," which Plaintiff represents as the associated costs in the preparation of its Motion. *Id.*

For the reasons described herein, Plaintiff's Motion is violative of the local rules of court and of a prior Order promulgated by this Court, and therefore should be denied. However, if not denied, the self-evident deficiencies in Plaintiff's Motion along with the attached Declaration and billing records should be sufficient justification for this Court to conclude that the amount of attorney's fees Plaintiff's counsel claims he is entitled to represents a grossly exaggerated and exorbitant amount. As detailed below, Plaintiff's claimed hourly rates along with the amount of hours he claims to have worked on this case are transparently unreasonable, and any fee award must be significantly reduced.  More specifically, Defendant respectfully suggests that, should this Court determine that Plaintiff is entitled to an award for attorney's fees, the total amount should not exceed $10,000.

**ARGUMENT**

"[D]istrict courts retain the discretion to modify a fee award based on the reasonableness of the request and the particular facts of the case." *Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 203 (D.D.C. 2016). "Thus, once a plaintiff successfully surmounts the eligibility hurdle, the fee inquiry becomes highly case specific." *Id.*; *see also Judicial Watch, Inc. v. U.S. Dep't of Justice*, 878 F. Supp. 2d 225, 239 (D.D.C. 2012) (examining whether the fees that were incurred

were reasonable after determining plaintiff demonstrated eligibility and entitlement). Courts typically consider whether the billing rates are reasonable and whether the hours expended on various matters in the case are reasonable. *See, e.g., Bd. of Trs. Of Hotel & Rest. Emps. Local 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998). "The party seeking fees has the . . . burden of establishing the reasonableness of the fees requested." *Elec. Priv. Info. Ctr. v.U.S. Dep't of Homeland Sec. II ("EPIC II")*, 218 F. Supp. 3d 27, 38 (D.D.C. 2016). But "the Court retains discretion to adjust the lodestar amount based on other relevant factors." *Id*. at 47 (citing *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1499-1500 (D.C. Circ. 1984)).

## I.   PLAINTIFF'S MOTION MUST BE DENIED FOR FAILURE TO COMPLY WITH LOCAL RULE 7(m) AND THIS COURT'S DECEMBER 2, 2022 ORDER

Courts in this District have routinely denied non-dispositive motions for failure to comply with Local Civil Rule 7(m). *Borum v. Brentwood Vill., LLC*, No. CV 16-1723 (RC), 2020 WL 5291982 (D.D.C. Sept. 4, 2020)(denying award of attorney's fees when plaintiffs failed to comply – despite being warned after previous violations – with an order from the court and Local Civil Rule 7(m)); *see also Walker v. District of Columbia*, 317 F.R.D. 600, 605 (D.D.C. 2016) (reducing an award of attorney's fees when plaintiffs failed to comply with a standing court order as well as Local Civil Rule 7(m)); *see also 12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.*, 316 F. Supp. 3d 22, 24 (D.D.C. 2018) ("[T]he court denies Plaintiffs' motion for failure to meet and confer as required by Local Civil Rule 7(m)."); *see also Henao v. Smiths Detection, Inc.*, No. 18-cv-2564, 2019 WL 2476631, at *1 (D.D.C. June 13, 2019) (holding same); *see also English v. Washington Metro. Area Transit Auth.*, 323 F.R.D. 1, 25 (D.D.C. 2017) ("This Court routinely denies non-dispositive motions for failure to comply with Rule 7(m).").

Here, Plaintiff filed an initial Motion for Attorney's Fees And Costs on November 23, 2022. ECF No. 48. In denying the aforesaid Motion, this Court's Order of December 2, 2022

stated, in part: "Before the Court is Plaintiff's Motion for Attorney Fees. It will be denied for two reasons. First, Plaintiff failed to comply with Local Civil Rule 7(m). That Rule provides, '[b]efore filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel in a good-faith effort to whether there is any opposition to the relief sought.' And it requires a party to indicate that the required discussion occurred. Plaintiff has not done so. Counsel filed this motion within two days of emailing Defendant a draft of its motion. By failing to give Defendant a reasonable time to respond to its email in this nonurgent motion, Plaintiff has not put forth the 'good-faith effort' required by Rule 7(m)." ECF No. 51 (internal citations omitted).

Subsequently, on January 13, 2023, Plaintiff filed a Status Report, which stated: "Plaintiff, Louise Trauma Center, LLC, now reports: Plaintiff will not seek to amend its complaint. Plaintiff has no more concerns, except for its motion for fees and costs. Plaintiff suggests that DHS respond to the Motion for Fees within 14 days. Plaintiff emailed DHS counsel on January 10th, asking if DHS would explain its position on fees. DHS said it needs more than 14 days to respond." ECF No. 52. Then, on January 14, 2023, after only four days since Plaintiff's e-mail inquiring into Defendant's position on attorney's fees, Plaintiff again prematurely filed the instant Motion, prior to the Defendant being able to give any response to his request on attorney's fees. Thus, prior to the filing of this Motion, the parties did not engage in good-faith negotiations, and Plaintiff did not provide Defendant with a "reasonable time" to respond to its January 10, 2023, e-mail inquiry into Defendant's position on attorney's fees. Accordingly, no statement indicating that good-faith discussions occurred is included in Plaintiff's Motion. Pl.'s Mot. at pgs. 1 - 21.

In other words, Plaintiff's Motion – for a second time – contravenes Local Civil Rule 7(m), and unambiguously defies the explicit terms of this Court's December 2, 2022 Order. Considering

Plaintiff's repeated violations of the local rules of court and of the Court's December 2, 2022 Order, Defendant respectfully requests that this Court strike the motion from the record entirely. Alternatively, Defendant requests that the motion be denied for the same reasons given in the Court's December 2, 2022 Order.  *See* ECF No. 51.

## II.   **PLAINTIFF'S HOURLY RATE IS UNREASONABLE**

Should this Court decide to consider Plaintiff's request for attorney's fees, Plaintiff's request for LSI *Laffey* Matrix rates is not reasonable. Plaintiff's Motion fails to demonstrate that the case is a complex federal litigation, and it does not offer evidence showing that the requested rates is the prevailing rate in non-complex FOIA cases. Alternatively, even if this matter constitutes complex federal litigation, the Court should award fees in accordance with the Fitzpatrick Matrix, as stated by the most recent case-law emanating from this District.

### A.   **Plaintiff's Work In This FOIA Case Was Not "Complex."**

It is well-established law that the LSI *Laffey* Matrix can only apply to complex federal litigation. *Reed v. District of Columbia*, 843 F.3d 517, 521 (D.C. Cir. 2016) ("[T]he Laffey Matrix and subsequent revisions to this matrix apply only to 'complex federal litigation [...]'"). And, as the D.C. Circuit recognized in *Eley*, litigation brought under a federal statute does not presumptively qualify as "complex federal litigation."  *Eley v. District of Columbia*, 793 F.3d 97, 105 (D.C. Cir. 2015) (district court abused its discretion in failing to hold plaintiff to its burden of demonstrating that a lawsuit under the Individual with Disabilities Education Act ("IDEA") was sufficiently complex to warrant application of potentially-applicable matrices).  At issue in *Eley* was litigation under the IDEA, a "subset" of civil rights litigation that, like FOIA litigation, typically does not involve discovery.  *Reed*, 843 F.3d at 525 ("We also understand that IDEA litigants may not have discovery and pre-trial exchanges of the sort found in other federal

litigation" and noting that "the absence of discovery may suggest that IDEA cases are not as complex as cases in which discovery is extensive").  Just as some IDEA cases may, however, be complex, even though many are not, some FOIA cases are complex, but others, like this one, are not.

As explained in *Cox*, "[c]ourts typically deem cases 'unusually complex' where they contain factors such as prolonged preparation time, lengthy proceedings, extensive administrative records, high numbers of witnesses and exhibits, and written closing statements." *Cox v. District of Columbia, Cox*, 264 F. Supp. 3d, 143 (D.D.C. 2017).  "Merely alleging the fees charged by other practitioners does not provide convincing evidence of the prevailing market rate." *Id.* at 140. Ultimately, in any particular case, the burden remains with the fee requester to demonstrate the complexity of a litigation and this burden "may not be easy" to meet. *Reed,* 843 F.3d at 525-26; *see also Platt v. District of Columbia*, 168 F. Supp. 3d 253, 267 (D.D.C. 2016) (recognizing that "in unusual cases, an IDEA plaintiff might be able to 'establish the applicability of [the] Laffey [Matrix] by proffering evidence that their IDEA proceeding was unusually complex'").  In *Reed*, the plaintiffs failed to meet their burden even though they had proffered six affidavits from attorneys familiar with IDEA litigation who opined that such litigation required specialized knowledge and was "akin" to complex federal litigation.  *Reed*, 843 F.3d at 525.

Plaintiff here has proffered no evidence to establish the relevant legal market or to establish that this case was complex. *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def*, 675 F.2d 1319, 1325 (D.C. Cir. 1982) ("an applicant is required to provide *specific evidence* of the prevailing community rate for the type of work for which he seeks an award" (emphasis added)).  Plaintiff merely cites a handful of other cases in which LSI *Laffey* Matrix rates were awarded. But each case, of course, involved its own discrete set of facts, and each plaintiff built its own record in

support of its claimed fees, and each defendant decided how to respond in each given action to the fee demand. *Id.* at n.7 ("fees awarded in other cases are probative of the appropriate community rate only if they were determined based on actual evidence of prevailing market rates, the attorneys involved had similar qualifications, and issues of comparable complexity were raised"); *see also id.* at 1325 n.6 (cases in which "the government did not challenge the reasonableness of the rates" may be uninformative, because the court thus "had no reason to inquire into the adequacy of the submissions on this issue").

Altogether, then, Plaintiff's Motion offers none of the requisite details demonstrating that the instant FOIA litigation was complex. That a given matrix for calculating attorney's fees was applied in another case, says little about what hourly rate should be applied in this case. Because Plaintiff's counsel has palpably failed to even attempt to meet his burden of offering "specific evidence" that the rates in those particular actions based on their own unique facts and arguments advanced therein are comparable to those that are claimed here, Plaintiff is not entitled to attorney's fees under the LSI *Laffey* Matrix. *Id.* at 1325.

**B.     Plaintiff's Motion Fails to Present Evidence That Lawyers Are Awarded Attorney's Fees For Similar Services At the LSI *Laffey* Matrix Rates**

Moreover, as a partially successful FOIA litigant seeking attorney's fees under the LSI *Laffey* Matrix, Plaintiff must provide the Court with "evidence that [its] 'requested rates are in line with those prevailing in the community for similar services[.]'" *Eley*, 793 F.3d at 104 (quoting *Covington v. District of Columbia*, 57 F.3d 1101, 1109 (D.C. Cir. 1995)). Such evidence may be found in: "(1) surveys [that] update [the matrix]; (2) affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases; and (3) evidence of recent fees awarded by the courts or through settlement to attorneys with comparable qualifications handling similar cases." *Id.* (internal quotations marks omitted). As

demonstrated below, Plaintiff fails to provide any acceptable affidavits in support of its Motion, nor does it provide any supporting evidence of recent fees awarded by courts in this District or in any other District, or through settlement, to attorneys with similar or the same qualifications held by Plaintiff's counsel.

> **1.    Plaintiff Fails To Provide Affidavits Reciting The Precise Fees That Attorneys With Similar Qualifications Have In Fact Received From Fee-Paying Clients In Comparable Cases.**

Plaintiff has failed to provide supporting affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases. *Nat'l Ass'n of Concerned Veterans,* 675 F.2d 1319 (requiring a fee applicant to state how his attorney "actually billed his time in other cases during the period . . . for which he seeks compensation from defendant. The rate is not what he would have liked to receive, or what the client paid in a single fortunate case, but what on average counsel has in fact received." (emphasis added)). Yet, Plaintiff has failed to provide any supporting affidavits in support of its Motion, besides a Declaration produced by Plaintiff's own counsel. ECF No. 54-2 ("Cleveland Dec.").

Yet, for several reasons, this Declaration cannot be regarded as having any evidentiary bearing for the purposes of Plaintiff's Motion. First of all, to establish the prevailing market rate in the relevant community, an attorney must produce affidavits "in addition to the attorney's own affidavits." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) ("To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."). For this reason alone, Plaintiff's Declaration, by itself, is legally insufficient to support its request for rates according to the LSI *Laffey* Matrix.

Equally importantly, Plaintiff's Declaration does not even attempt to recite the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases; instead, it disparately cites past cases which Plaintiff's counsel has litigated, none of which support his claim that he should be compensated according to the LSI *Laffey* Matrix. More specifically, some of the cases Plaintiff cites in this regard are cases in which the courts declined to award Plaintiff's counsel any attorney's fees at all. Cleveland Dec. ¶¶ 7-8, 13-14. For the rest, Plaintiff references three cases in which Plaintiff's counsel was awarded attorney's fees: *Cerjan v. Fasula*, 539 F. Supp. 1226 (N.D. Oh. 1981), *Abtew v. Dep't of Homeland Sec.*, No. 13-1566, 2014 WL 2620982 (D.D.C. 2016) and *Gatore v. Dep't of Homeland Sec.*, 286 F. Supp. 3d 25 (D.D.C 2018). Cleveland Dec. ¶ 3, 9, 11. But, in *Abtew* and *Gatore*, the courts specifically refused to award Plaintiff's counsel attorney's fees according to the LSI *Laffey* Matrix. *Abtew*, (declining the use of the LSI Matrix in calculating the attorney's fees due to Plaintiff's counsel in a FOIA litigation); *Gatore*, (holding same). Furthermore, *Cerjan* was a civil rights case brought under 42 U.S.C. § 1983 nearly four decades ago in the U.S. District Court for the Northern District of Ohio where a prevailing party was requesting attorney fees under 42 U.S.C. § 1988. *Talley v. District of Columbia*, 433 F. Supp. 2d 5, 7 (D.D.C. 2006)(In any action to enforce a provision of section 1983, the court, may allow the prevailing party, a reasonable attorney's fee under 42 U.S.C. § 1988(b)). Thus, because *Cerjan* was a § 1983 action, it is completely irrelevant to Plaintiff's Motion.[1]

---

[1] There is one additional point Defendant would like to raise regarding Plaintiff's Declaration supporting his request for fees. Despite its assertion that "[Plaintiff's counsel] recorded time contemporaneously by the minute," Plaintiff's billing records contain an entry for 1.5 hours on the date of November 10, 2022 which states: "preparing itemization of attorney hours." Cleveland Dec. ¶ 17; see also ECF No. 54-3 at pg. 10. While Defendant is not certain what this billing entry (let alone the rest of Plaintiff's billing entries) is specifically intended to mean, to the extent that it can be understood as an indication that Plaintiff's billing records were created on November 10,

Given that Plaintiff's single supporting affidavit is wholly inadequate to support the application of the LSI *Laffey* Matrix in this case, this Court should decline to award Plaintiff attorney's fees according to the LSI *Laffey* Matrix.

> **2.      Plaintiff Fails To Provide Evidence Of Recent Fees Awarded To The Court Or Through Settlement To Attorneys With Comparable Qualifications Handling Similar Cases.**

Further, Plaintiff's evidence under the final method of proving entitlement to its preferred rates—"evidence of recent fees awarded by the court or through settlement to attorneys with comparable qualifications handling similar cases"—is equally unavailing. *Covington v. District of Columbia*, 57 F.3d 1101, 1109 (D.C. Cir. 1995). Rather, Plaintiff's Motion merely asserts in a wholly fact-free and conclusory fashion that the LSI *Laffey* Matrix is "better" than the Fitzpatrick Matrix, and then attempts to support this assertion by citing to disparate cases in which courts awarded LSI *Laffey* rates. Pl.'s Mt. at pgs. 17 – 20. However, none of the cited cases constitute a "similar case[.]" to this one. *Eley*, 793 F.3d at 104.

For example, Plaintiff cites to *U.F. v. District of Columbia*, No. 19-2164 (BAH), 2020 WL 4673418 (D.D.C. Aug. 12, 2020). Pl.'s Mot. at 17. However, *U.F.* is distinguishable from the present case, on several grounds. Most crucially, unlike here, the *U.F.* litigation was not a FOIA matter, and there was no dispute between the parties that the *U.F.* constituted a complex federal litigation. *Id.* Thus, the decision in *U.F.* is dissimilar to this FOIA case. Plaintiff has failed to

---

2022, then Defendant will note that this completely contradicts and therefore destroys the credibility of Plaintiff's Declaration, inasmuch as the aforesaid billing entry proves that Plaintiff's billing records were not contemporaneously produced at all. Defendant will additionally note that attorney's fees in this District are routinely dramatically reduced when plaintiffs keep non-contemporaneous billing records. *See* e.g. *Webster v. U.S. Dep't of Just.*, No. CV 02-603 (RC), 2021 WL 4243414 (D.D.C. Sept. 17, 2021)(reducing plaintiffs' attorney's fees by 40% for lack of contemporaneous billing records).

demonstrate that its case comprises complex federal litigation and Defendant specifically contests its complexity – and therefore, *U.F.* does not in any way support Plaintiff's Motion.

Plaintiff also cites to *Mattachine Soc'y of Washington, DC v. U.S. Dep't of Justice*, 406 F. Supp. 3d 64 (D.D.C. 2019). Pl.'s Mot. at 17 – 18. But, once again, *Mattachine* is distinguishable. Notably, attorney's fees in *Mattachine* were principally determined based on a D.C. Circuit decision criticizing the application of the United States Attorney's Office ('USAO') Matrix for cases involving complex federal litigation. *Id*. at 71 ("After considering all three options, the Court has decided that the Laffey Matrix is applicable here. This choice is largely based upon a D.C. Circuit decision from May of 2019 which rejected the USAO Matrix for its failure to 'survey[ ] the relevant population' and 'canvass[ ] the relevant type of lawyer' before imposing a specific hourly rate.")(*citing DL v. District of Columbia*, 924 F.3d 585, 592 (D.C. Cir. 2019)). Here, and as stated above, Plaintiff fails to demonstrate that the instant FOIA litigation constitutes complex federal litigation. As well, while *Mattachine* does concededly state that the LSI *Laffey* Matrix is a superior matrix to the USAO Matrix, it emphatically does not stand for the proposition that the LSI *Laffey* Matrix is a superior matrix to the Fitzpatrick Matrix. In fact, as will be demonstrated below, the most recent case-law in this District holds that the Fitzpatrick Matrix is a superior matrix to the LSI *Laffey* Matrix.

### C.   Rates From The 2022 Fitzpatrick Matrix Most Accurately Reflect the Market For Complex Federal Litigation Generally And Are Superior to Those Underlying The LSI *Laffey* Matrix

In a decision published by this District approximately two months ago, the court found that it was "convincingly establish[ed] that the Fitzpatrick Matrix offers a superior measure of the prevailing market rate for complex federal litigation in the District as compared to the LSI *Laffey* Matrix." *J.T. v. D.C.*, No. 19-CV-989 (BAH), 2023 WL 355940, 32 (D.D.C. Jan. 23, 2023).

Several reasons were provided by way of justification for this ruling. First, it was determined that "while both matrices base their calculations on rates obtained from federal proceedings in this Court, the Fitzpatrick Matrix's underlying dataset has the clear benefit of being much more recent." *Id*. Second, "the Fitzpatrick Matrix derives its rates from a large sample size, incorporating '675 lawyer-year data points (one data point for each year in which a lawyer charged an hourly rate) from 419 unique lawyers from 84 unique cases', which points 'spanned from years 2013 to 2020, from $100 to $1250, and from less than one year of experience to 58 years'". *Id*. at 33 (citation omitted). Third, "the Fitzpatrick Matrix takes that dataset and uses it to calculate rates in 36 individual experience categories," unlike the LSI *Laffey* Matrix, which, "by contrast, breaks lawyers' rates into only five bands of experience." *Id*. at 34-35 (citation omitted). After further concluding that the Fitzpatrick Matrix was more consistent "common economic practice" and "common sense" than the LSI *Laffey* Matrix, the *J.T.* decision concluded that "the Fitzpatrick Matrix offer[s] the more appropriate measure of the prevailing market rates for complex federal litigation in the District of Columbia." *Id*. at 37, 39.

Ultimately, it is Defendant's position that the instant case does not constitute a complex federal litigation, and therefore, to the extent that Plaintiff is entitled to attorney's fees, these should not be calculated according to the LSI *Laffey* Matrix or the Fitzpatrick Matrix. However, if this Court determines that this case does constitute a complex federal litigation, Plaintiff's attorney's fees should be calculated according to the Fitzpatrick Matrix under the recent *J.T.* decision promulgated in this District.

## III.   THE NUMBER OF HOURS PLAINTIFF CLAIMS TO HAVE SPENT ON THIS CASE IS UNREASONABLE

As a preliminary matter, Plaintiff's billing records are so disorganized and unreadable that a meticulous line-by-line review of each of Plaintiff's counsel's billing entries for the purposes of

the instant opposition brief is not practicable. ECF No. 54-3 ("Pl.'s Billing Records"). Plaintiff's

billing records purportedly reflect 269 total hours of billing entries in relation to the instant case.

[2] *Id.* at pg. 10. Plaintiff reduces the hours for which it seeks attorney's fees by 5% (or 13.45 hours)

to account for potential overbilling, and then by an additional 20% (or 51.11 hours) to account for

the fact that Defendant was granted partial summary judgment in this case. *Id.* Plaintiff's counsel

is therefore only seeking attorney's fees for 204.44 of the hours that he purportedly spent working

on this case. *Id.* However, only a cursory examination of the billing records reveals that much of

the work that Plaintiff's counsel allegedly performed in relation to this litigation was non-

compensable, and further, that many of Plaintiff's counsel's time entries are so lacking in

necessary descriptive detail that attorney's fees for those time entries are precluded under the

governing case law.

A.    **Plaintiff's Billing Records Contain Considerable Evidence of Needless and/or Duplicative Work**

To the extent that Plaintiff's billing records can be adequately deciphered, a

disproportionate amount of the 204.44 hours for which Plaintiff seeks attorney's fees clearly

consist of needless and/or duplicative tasks. As such, the Court should exclude from any award

fees that were unnecessarily incurred or excessive.  *EPIC v. DHS*, 982 F. Supp. 2d 56, 60 (D.D.C.

2013) ("[T]his Court expects fee applicants to exercise billing judgment.  Where applicants fail to

do this, the Court will exclude 'hours that are excessive, redundant, or otherwise unnecessary'

after considering the record."); *Environmental Defense Fund, Inc. v. Reilly,* 1 F.3d 1254*, 1258*

(D.C. Circ. 1993) ("In deciding the reasonableness of the hours reported, we properly disallow

'time spent in duplicative, unorganized or otherwise unproductive effort.'"); *Conservation Force*,

---

[2] The undersigned counsel for Defendant has attempted to add up the hours listed in Plaintiff's billing records and found that the cumulative sum is 267 hours.

160 F. Supp. 3d 194 at 203 ("it is important to note that, even after finding eligibility and entitlement, district courts retain the discretion to modify a fee award based on the reasonableness of the request and the particular facts of the case").

Here, Plaintiff's counsel's time entries – again, to the extent that they are readable – evidence enormous inefficiencies and a lack of billing judgment. *Copeland v. Marshall*, 641 F.2d 880, 902-03 (D.C. Cir. 1980) ("not allowable are hours that simply should not have been spent at all, such as where attorneys' efforts are unorganized or duplicative"). For example, on April 28, 2020 and April 29, 2020, Plaintiff's counsel billed a cumulative 2.3 hours for "reviewing court website; ECF rules; checklist for attorneys" and "reading court rules re filing" in preparation for the filing of Plaintiff's FOIA Complaint. Pl.'s Billing Records at pg. 2. Moreover, on May 1, 2020, April 22, 2022, and May 12, 2022, Plaintiff's counsel also billed a cumulative 5.8 hours of "research" into Rules 8, 11(b), and 59 of the Federal Rules of Civil Procedure. *Id.* at pgs. 2, 9. Every attorney who practices in the U.S. District Court for the District of Columbia is required to certify their familiarity with the local rules of court. *See* a true and correct copy of the Application for Admission to the U.S. District and Bankruptcy Courts for the District of Columbia, attached as Exhibit A. Moreover, Defendant should not be required to compensate Plaintiff's counsel for familiarizing himself with the "court website," "ECF rules," or the Federal Rules of Civil Procedure, when, as a lawyer who has been litigating cases in this District since the early 1990s, it was already expected that he should have been adequately familiarized with the aforesaid information long before the instant FOIA litigation was initiated.[3]

---

[3] Plaintiff's counsel has been admitted before the U.S. District Court for the District of Columbia on June 1, 1992.

Furthermore, on June 7, 2021, September 17, 2021, and December 15, 2021, Plaintiff's counsel egregiously billed a cumulative 3.9 hours for time that he allegedly spent re-reading the short 4-page Complaint he filed on behalf of Plaintiff for the instant FOIA litigation. Pl.'s Billing Records at pgs. 6 and 8.  On August 14, 2020, he also outrageously bills 1.5 hours for "CIS is confused? study of file and requests." Pl.'s Billing Records at pg. 3. There is no sense in which Plaintiff can justify billing Defendant for needlessly reading and re-reading its own pleadings and FOIA requests.

Plaintiff's billing records frequently lack sufficiently descriptive details that would allow for an assessment of whether each of the tasks Plaintiff's counsel purportedly completed in relation to this case constitutes needless and/or duplicative work. However, to the extent that needless and/or duplicative work can be identified in the billing records, Defendant requests that this Court reduce the hours claimed in Plaintiff's Motion accordingly.

**B.    Plaintiff's Billing Records Are Insufficiently Descriptive**

It is axiomatic that insufficiently descriptive billing records merit a reduction in compensable hours for the purposes of assessing attorney's fees. *CREW v. U.S. Dep't of Homeland Sec.,* No. 08–1046, 2010 WL 8971920, at *2 (D.D.C. Apr. 21, 2010) (finding that time records such as "research, draft and final prep of plaintiff's opposition and cross-motion for SJ; confer w/ co-counsel […] lack the adequate detail that would permit the Court to evaluate whether CREW's fee request is justified"); *Conservation Force v. Salazar,* 916 F.Supp.2d 15, 28 (D.D.C.2013) (finding that "general descriptions," such as "Opposition to Motion to Strike," merit a reduction in hours compensated); *Role Models America, Inc. v. Brownlee,* 353 F.3d 962, 971 (D.C. Cir. 2004) (explaining that "generic entries" in which attorneys "billed simply for 'research' and 'writing,' or for time spent in teleconferences or meetings ... the purposes of which are not provided" are

"inadequate to meet a fee applicant's heavy obligation to present well-documented claims") (internal quotation marks omitted); *Michigan v. Envtl. Prot. Agency,* 254 F.3d 1087, 1095 (D.C.Cir.2001) ("There are, in particular, numerous entries concerning meetings and conferences that, although they include information concerning the identities of the individuals involved, are nevertheless devoid of any descriptive rationale for their occurrence. Therefore, as we have done in similar circumstances in the past, after all other deductions have been taken we will make a further deduction of 10% of the remaining billings."); *Miller v. Holzmann*, 575 F. Supp. 2d 2, 36 (D.D.C. 2008), amended in part, vacated in part sub nom. U.*S. ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, 786 F. Supp. 2d 110 (D.D.C. 2011) (finding that counsel's time records were "simply rife with ambiguous and nugatory entries" such as "reviewing and analyzing issues re strategy" and "preparing for trial," and concluding that the ambiguity of counsel's time entries warranted an across-the-board reduction).

Here, Plaintiff's counsel's first-time entry on April 28, 2020 was for 1.5 hours, and the task that he allegedly completed was "gathering requests and responses." Pl.'s Billing Records at pg. 2. What follows is a veritable deluge of entirely non-descriptive billing entries which reference Plaintiff's counsel's "revising," "reviewing," "studying," "reading," "re-reading," "preparing," "commenting" on, "research[ing]," and "drafting" documents which are not specifically defined or identified. Id. at pgs. 2 – 11. It is no exaggeration to say, in fact, that most of Plaintiff's time entries lack any description detailing the task Plaintiff's counsel performed, or why he performed it. For example, on September 3, 2020, Plaintiff's billing records contain a .9 hour time entry for "study of history; emails." Pl.'s Billing Records at pg. 3. What "history" did Plaintiff "study," and which "emails," and why? Defendant is unclear, for no description is furnished by Plaintiff.

Additionally, on August 15, 2020 and August 18, 2020, Plaintiff's billing records contain the following entries: "study of [sic] ifle; preparing draft of JSR," "preparing JSR; email to B Peterson," "revising JSR; email to B P," and "revising JSR again!" Pl.'s Billing Records at pg. 3. These entries cumulatively amount to 2.9 hours of work that Plaintiff supposedly performed in relation to the 2-page Joint Status Report that was filed with this Court on August 18, 2020. ECF No. 10. Why did Plaintiff's counsel find it necessary to study his entire case file to prepare a Joint Status Report, and how could an attorney with as much experience as Plaintiff's counsel require nearly 3-hours to prepare a 2-page, double-spaced document that was merely intended to update this Court on case status? While Defendant strongly suspects that Plaintiff's counsel is significantly overbilling his time, this is impossible to know with certainty, because Defendant would have to know precisely what task Plaintiff is claiming to have performed before determining whether the time spent on the task was reasonable. And unfortunately, time entries such as "study of [sic] ifle" do not provide the requisite detail that Defendant would need to know what task Plaintiff is claiming was performed, or whether and to what extent Plaintiff's counsel overbilled for the inadequately described task.

As such, should this Court decide that Plaintiff is entitled to an award for attorney's fees, Defendant respectfully requests that this Court exclude all insufficiently descriptive time entries from Plaintiff's award for attorney's fees.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court deny Plaintiff's Motion for Attorney's Fees, or in the alternative, award Plaintiff's attorney's fees at a significantly reduced hourly rate and without awarding any attorney's fees for Plaintiff's non-compensable and insufficiently descriptive time entries.

Dated: March 23, 2023
        Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By: _____ /s/*Fithawi Berhane*_____
    FITHAWI BERHANE
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    (202) 252-6653
    Fithawi.Berhane@usdoj.gov

*Attorneys for the United States of America*