## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LOUISE TRAUMA CENTER LLC**, | |
| Plaintiff, | |
| v. | Case No. 1:20-cv-01128 (TNM) |
| **UNITED STATES DEPARTMENT OF HOMELAND SECURITY**, | |
| Defendant. | |

## MEMORANDUM OPINION

Plaintiff Louise Trauma Center LLC filed Freedom of Information Act (FOIA) requests with Customs and Immigration Services (USCIS).  After no response, the Center sued under FOIA.  The merits of this dispute have been resolved, and now the Court considers the Center's motion for attorney's fees and costs.  The Court finds that the Center is entitled to and eligible for fees.  But because the Center's request is excessive, the Court will award it less than it seeks.

## I.

The Center is a nonprofit organization that helps "immigrant women who have suffered from gender-based violence" obtain asylum in the United States.  Compl. ¶ 5, ECF No. 1.  It submitted four FOIA requests to USCIS about the agency's handling of a particular FOIA provision and its related training for asylum officers.[1]  *See* Compl. Exs. A–D, ECF Nos. 1-1–1-4.  USCIS failed to respond within the statutory period, so the Center sued under FOIA.  The agency then searched for responsive records and produced thousands of pages.  *See* Joint Status Report

---

[1] The listed Defendant is the Department of Homeland Security, the parent agency of USCIS.  But based on the record, USCIS employees conducted the searches and resolved the Center's requests.  So when describing actions of the Defendant, the Court will refer to USCIS, not the Department.

at 1, ECF No. 10.  The agency withheld some information under various FOIA exemptions.  *See id.*

After these disclosures, the Center voluntarily dismissed Count III of its Complaint and confirmed that USCIS had fully responded to the FOIA request comprising Count I.  *See* Joint Status Report at 1, ECF No. 12.  But the Center moved for summary judgment on Counts II and IV, asserting that the agency's searches were inadequate.  *See* First Mot. for Summ. J., ECF No. 11.  USCIS also moved for summary judgment, *see* ECF No. 15, but then it sought a stay after discovering that there were "gaps in the search parameters for possible responsive information." Mot. to Stay at 1, ECF No. 19.  So USCIS conducted a supplement search and released more records to the Center, again withholding certain information under various FOIA exemptions. *See* Decl. of Jennifer Piateski (Piateski Decl.) ¶ 12, ECF No. 28-4.  The Court ordered a new round of briefing to avoid piecemeal challenges.  *See* Min. Order, July 16, 2021.

The parties again moved for summary judgment.  *See* Def.'s Mot. for Summ. J., ECF No. 28-2; Pl.'s Cross-Mot. for Summ. J. (Pl.'s MSJ), ECF No. 29-1.  The Center sought summary judgment on Counts I and III because USCIS did not respond within the allotted time.  *See* Pl.'s MSJ at 5, 14.  The Court denied the motion as to those counts, reasoning that the Center already "jettisoned" those claims.  *See Louise Trauma Ctr. LLC v. DHS*, No. 20-cv-1128, 2022 WL 1081097, at *2 (D.D.C. Apr. 11, 2022) (explaining that the Center dismissed Count III and said that USCIS had "complied in full" with Count I (citing Joint Status Report, ECF No. 10)).

The Court then considered the merits of Counts II and IV.  For both counts, the Court concluded that the agency had not shown its search for records was adequate.  *See id.* at *3–*4. So the Court granted the Center summary judgment as to the adequacy of those searches.  The Center also challenged the agency's withholdings under Exemptions 5, 6, and 7(E).  The result

was a mixed bag.  For Exemption 5, the Court granted the Center summary judgment as to those withholdings invoking the deliberative process privilege.  *See id.* at *6.  On the other hand, the Court granted USCIS summary judgment as to the Exemption 5 withholdings invoking the attorney work-product privilege.  *See id.*  The Court also found the agency was entitled to summary judgment as to its withholdings under Exemption 6.  *See id.* at *7.  Finally, the Court held that Exemption 7(E) applied to all but one page of the challenged withholdings, which was already in the public domain.  *See id.* at *10.

After the Court's ruling, USCIS provided the Center with reprocessed pages that were previously withheld under Exemption 5.  *See* Joint Status Report at 1, ECF No. 46.  The agency also conducted supplemental searches on Counts II and IV.  For Count II, the agency found no additional responsive records.  *See id.*  For Count IV, the agency's supplemental search turned up another 206 pages, which the agency released to the Center.  *See id.*

In January 2023, the Center informed the Court that it "ha[d] no more concerns" and would not be seeking to amend.  Pl.'s Status Report at 1, ECF No. 52.  The next day, the Center filed a motion for attorney's fees and costs.  *See* Pl.'s Mot. for Att'y Fees (Pl.'s Mot.), ECF No. 54.  The agency opposes, arguing that the Center's request is excessive.  *See* Opp'n, ECF No. 57.  The fee motion is now ripe for decision.

## II.

FOIA permits courts to assess "against the United States reasonable attorney fees and other litigation costs reasonably incurred . . . in which the complainant has substantially prevailed."  5 U.S.C. § 552(a)(4)(E)(i).  To recover fees and costs, the Center "must show that it is eligible for fees and that it is entitled to them."  *WP Co. LLC v. DHS*, No. 20-cv-1487, 2023 WL 1778196, at *1 (D.D.C. Feb. 6, 2023).  If the Center shows both, the Court assesses whether

the requested amount is reasonable.  *See id.* at *4.  The Center carries the burden of showing that

its request is justified.  *See id.*

First, eligibility.  A party is "eligible" to receive fees if it has "substantially prevailed."

*Judicial Watch, Inc. v. U.S. Dep't of Com.*, 470 F.3d 363, 368–69 (D.C. Cir. 2006).  Under

FOIA, a party substantially prevails if it has obtained relief through a judicial order, as here.  *See*

5 U.S.C. § 552(a)(4)(E)(ii).  USCIS does not dispute that the Center meets this requirement.

The Court ordered the agency to complete processing of and produce all nonexempt

documents by a specified date.  *See* Min. Order, Nov. 19, 2020.  And the Court later granted

partial summary judgment to the Center and required the agency to conduct supplemental

searches and disclose some previously withheld records.  *See* Order, ECF No. 38.  So the Center

is eligible for fees.  *See* 5 U.S.C. § 552(a)(4)(E)(ii).

Next, entitlement.  To determine whether the Center is entitled to fees, the Court

considers "(1) the public benefit derived from the case; (2) the commercial benefit to the

plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the

agency's withholding of the requested documents."  *McKinley v. Fed. Hous. Fin. Agency*, 739

F.3d 707, 711 (D.C. Cir. 2014) (cleaned up).  After considering these factors, the Court

concludes that the Center is entitled to fees.  And as with the eligibility prong, the agency does

not dispute this.[2]

---

[2]  The agency argues that the Center's motion should be denied for failure to comply with Local
Civil Rule 7(m).  *See* Opp'n at 2–4.  That rule requires parties to meet and confer before filing
any non-dispositive motion.  *See* LCvR 7(m).  The Center counters that it complied with the rule
and that, even if it did not, the rule does not apply to FOIA fee petitions anyway.  *See* Reply at
6–9.  The Court need not consider these arguments.  "The Court may, in the interest of judicial
economy, reach the merits of a motion despite the parties' failure to satisfy Local Civil Rule
7(m)."  *English v. WMATA*, 323 F.R.D. 1, 26 (D.D.C. 2017).  So the Court will not deny the
Center's fee motion on this basis, even assuming that Rule 7(m) applies here and that the Center
ignored it.

The first factor favors awarding fees.  The Center requested documents concerning asylum officers and their training.  "The nature of the subject that the request seeks to illuminate is obviously important." *Morley v. CIA*, 810 F.3d 841, 844 (D.C. Cir. 2016).  So these requests had "a modest probability of generating useful new information about a matter of public concern." *Id*.  The requests thus had potential public value.

The second and third factors—the "commercial benefit" and "plaintiff's interest" factors—also favor the Center.  *McKinley*, 739 F.3d at 711.  The Center is a nonprofit organization whose mission is to help immigrant woman obtain asylum.  *See* Compl. ¶ 5.  To that end, it "publicizes," "educates," and "sets forth new asylum cases, briefs, reports, and analysis on the law surrounding these women and their issues." *Id.*  And "those requesters who seek documents for public informational purposes are favored by FOIA, and they engage in the kind of endeavor for which a public subsidy makes some sense." *Elec. Priv. Info. Ctr. (EPIC) v. DHS*, 999 F. Supp. 2d 61, 69 (D.D.C. 2013) (cleaned up).  So the second and third factors support awarding the Center fees.

Finally, the fourth factor—"the reasonableness of the agency's conduct"—supports awarding fees.  *McKinley*, 739 F.3d at 711.  The Court held that the agency violated its duties under FOIA.  After finding that USCIS failed to conduct adequate searches on Counts II and IV, the Court ordered the agency to conduct supplemental searches.  *See* 2022 WL 1081097, at \*4.  And these searches turned up over 200 pages that USCIS had initially missed.  *See* Joint Status Report at 1, ECF No. 46.  More, the Court ruled against the agency on some of its withholdings under Exemptions 5 and 7(E).  *See* 2022 WL 1081097, at \*6, \*10.  So the fourth factor points in the Center's direction.

Taken together, the Center is both eligible for and entitled to attorney's fees under FOIA's fee-shifting provision.

## III.

Having determined that the Center is entitled to an award of attorney's fees, the Court must exercise its discretion and calculate the precise size of that award. The "usual method of calculating reasonable attorney's fees is to multiply the hours reasonably expended in the litigation by a reasonable hourly fee, producing the 'lodestar' amount." *Bd. of Trs. of Hotel and Rest. Emps. Local 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998) (cleaned up). "That number may then be adjusted to reflect the significance of the overall relief obtained by the plaintiff." *Am. Immigr. Council v. DHS*, 82 F. Supp. 3d 396, 408 (D.D.C. 2015).

The Center requests $156,800 in fees for this litigation. *See* Reply at 24. It requests an additional $45,044 in "fees on fees" for work on this motion. *Id.* USCIS objects to both the claimed hourly rates and the number of hours billed. The Court considers each variable in turn before calculating the final award.

## A.

First, hourly rate. "To calculate fees for public-interest attorneys who have no customary hourly rates, courts often look to prevailing market rates in the [relevant] community." *Am. Immigr. Council*, 82 F. Supp. 3d at 409. The Center received pro bono representation from a self-employed volunteer attorney with over 35 years' experience. *See* Decl. of David Cleveland (Cleveland Decl.) ¶ 1, ECF No. 54-2. So the Court looks to the prevailing market rate for similar legal services.

6

The Center has two routes to establish that rate.  First, it can show that this litigation qualifies as "complex federal litigation."  If so, Fitzpatrick Matrix rates presumptively apply.[3] *See J.T. v. District of Columbia*, Nos. 19-cv-989, 22-cv-91, 2023 WL 355940, at *19 (D.D.C. Jan. 23, 2023).  Second, the Center "can provide evidence of the fees charged and received by litigators in cases brought under the fee-shifting statute in question." *12 Percent Logistics, Inc. v. Unified Carrier Registration Bd.*, No. 17-cv-2000, 2020 WL 7248347, at *4 (D.D.C. Dec. 9, 2020) (cleaned up).  The Center tries both.

First, the Center contends that FOIA cases are per se "complex federal litigation" justifying Fitzpatrick Matrix rates.  It argues that USCIS "conceded that FOIA litigation was 'complex' in" a different case before this Court, and that "FOIA litigation was deemed complex in" a case before another judge in this district.  Reply at 10.  This may be so, but the Center's conclusion—that FOIA cases are essentially always complex—does not follow. *See id.* "[T]here is no presumption that FOIA cases qualify as complex federal litigation." *Webster v. DOJ*, No. 2-cv-603, 2021 WL 4243414, at *11 (D.D.C. Sept. 21, 2021); *accord Envtl. Def. Fund v. EPA*, No. 17-cv-2220, 2022 WL 136792, at *7 (D.D.C. Jan. 13, 2022).  So the Center must show that this particular case qualifies as complex federal litigation.

The Center does not meet its burden.  Indeed, it makes little effort to show that this case was especially complex.  And the Court doubts that it is.[4]  "This was not an unusual FOIA case.

---

[3]  The Fitzpatrick Matrix is a schedule of hourly fees based on years of attorney experience developed by the U.S. Attorney's Office for the District of Columbia. *See* Fitzpatrick Matrix & Explanatory Notes, ECF No. 58-3.  It has been developed to provide a reliable assessment of fees charged for complex federal litigation in the District. *See id.*  USCIS agrees that the Fitzpatrick Matrix provides the most accurate measure of complex federal litigation in the District of Columbia. *See* Opp'n at 10–11.

[4]  In its reply, the Center argues for the first time that this litigation is complex because the agency requested an extension of time.  The agency justified its request in part because the case has a "complex procedural history" and the government attorney needed to "consult with agency

It was not a class action on behalf of a large number of plaintiffs; it did not involve particularly voluminous or complicated factual and legal issues; it did not require plaintiff[] to conduct extensive investigation and discovery; and it required no specialized non-legal knowledge." *Envtl. Def. Fund*, 2022 WL 136792, at *7. Indeed, this case was "resolved on a motion for summary judgment involving straightforward issues." *Rooths v. District of Columbia*, 802 F. Supp. 2d 56, 63 (D.D.C. 2011). So the Center has not shown that this case qualifies as complex federal litigation such that the Fitzpatrick Matrix presumptively applies.

The Center has a second route to showing the reasonableness of its requested rate. It can produce evidence that the rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Urban Air Initiative, Inc. v. EPA*, 442 F. Supp. 3d 301, 323 (D.D.C. 2020).

First, the Center notes that certain partners at large law firms command rates above Fitzpatrick Matrix rates. *See* Pl.'s Mot. at 18–19 (citing the billing rates of prominent attorneys including Neil Katyal, Eric Holder, and David Boies). This argument fails. The relevant comparators are "attorneys with comparable qualifications handling similar cases." *Covington v. District of Columbia*, 57 F.3d 1101, 1109 (D.C. Cir. 1995). The Center fails to show that its work is of the same ilk.

More, that other lawyers command a premium says nothing about the billing rates for lawyers in the District who represent clients in immigration proceedings. And the Court observed in this case that the Center "largely failed" to "clearly state its arguments and provide relevant caselaw as support." *Louise Trauma Ctr. LLC*, 2022 WL 1081097, at *8 n.7; *see also*

---

counsel." Reply at 9 (citing ECF No. 56). But a complex procedural history is a very different concept from a complex case. In any event, the Court does not consider arguments raised for the first time in reply. *See Lu v. Lezell*, 45 F. Supp. 3d 86, 91 (D.D.C. 2014).

*id.* ("[l]ittered throughout the Center's briefings are conclusory assertions about how USCIS has violated the law").  Indeed, the Center's briefs left much to be desired.  The Court thus rejects the implication that the Center's work is on par with that of the other attorneys it references.

The Center's only other evidence in support of its requested rate is a declaration from its counsel.  *See generally* Cleveland Decl.  Counsel points to three cases in which he was awarded attorney's fees.  *See id.* ¶¶ 3, 9, 11 (citing *Cerjan v. Fasula*, 539 F. Supp. 1226, 1236 (N.D. Ohio 1981); *Abtew v. DHS*, No. 13-cv-1566, 2014 WL 2620982 (D.D.C. 2016); *Gatore v. DHS*, 286 F. Supp. 3d 25 (D.D.C. 2018)).  These submissions do not persuade.

*First*, *Cerjan* was a civil rights case brought under 42 U.S.C. § 1983 nearly four decades ago in another district.  Again, the relevant comparators are lawyers "handling similar cases," *Covington*, 57 F.3d at 1109, and FOIA is not analogous to § 1983.  *Second*, the Center fails to explain, even in a conclusory manner, how the litigation in *Abtew* and *Gatore* compare to this case.  While both were FOIA cases, they do not resemble the Center's case.  More, each qualified as complex federal litigation.  *See Gatore*, 286 F. Supp. 3d at 47 (awarding fees "at the prevailing rate for complex federal litigation"); *Abtew*, Mem. Op. and Order at 13, No. 13-cv-1566, ECF No. 49 (awarding fees at the Laffey rates, which only apply to complex federal litigation).  And because the Center has not shown that this case is especially complex, neither *Gatore* nor *Abtew* helps it.

Besides its citations to other FOIA cases, the Center has produced absolutely no evidence other than its counsel's own declaration to support the reasonableness of its requested rate.  Even if this evidence were persuasive, the Center must produce evidence "in addition to the attorney's own affidavits" to establish the reasonableness of its requested rates.  *Eley v. District of*

*Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015) (cleaned up).  The Center's evidence does not come close to satisfying its burden.

In this case, "a rate considerably below" the Fitzpatrick maximum is called for.  *Rooths*, 802 F. Supp. 2d at 63.  The Court will thus award fees at an hourly rate equal to 80% of the Fitzpatrick rate.

## B.

Consider next the reasonableness of the hours billed.  The Center claims to have spent 269 hours litigating this case.  It reduces its hours by 5% to account for overbilling and then by another 20% to account for its limited success at summary judgment.  *See* Pl.'s Mot. at 16.  So the Center says 204.44 hours are compensable.

USCIS says this is unreasonable.  Its arguments fall into two buckets.  First, it says that the Center's billing records contain considerable evidence of needless and duplicative work.  Second, it says that the Center's records are insufficiently descriptive.  The Court agrees on both scores.

## 1.

The Center's billing records are difficult to decipher.  *See* Itemization of Hours, Ex. C, ECF No. 54-3.  But from what the Court can tell, it spent too much time on this case.

The touchstone for attorney's fees is reasonableness, so the Court must "exclude hours that are excessive, redundant, or otherwise unnecessary." *EPIC v. DHS*, 982 F. Supp. 2d 56, 60 (D.D.C. 2013).  But "trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 562 U.S. 826, 838 (2011).  In this context, "[t]he essential goal . . . is to do rough justice, not to achieve auditing perfection." *Id.*  Thus, the Court "may use estimates in calculating and allocating an attorney's time." *Id.*  This means that the Court "may attempt to

identify specific hours that should be eliminated" or "simply reduce the award to account for" overbilling. *Hensley v. Eckerhart*, 461 U.S. 424, 436–37 (1983).

The Center's time entries show significant inefficiencies and a lack of billing judgment. The Court gives a few examples. Before filing its complaint, the Center's counsel spent 2.3 hours "reviewing court website; ECF rules; checklist for attorneys" and "reading court rules re filing." Itemization of Records at 2. Counsel also billed 5.8 hours for "research" into Rules 8, 11(b), and 59 of the Federal Rules of Civil Procedure. *See id.* at 2, 9. As the agency notes, every attorney who practices in this Court must certify their familiarity with both local and federal rules.

Other entries show that the Center's request is unreasonable. For instance, counsel spent more than 15.4 hours "reviewing," "studying," or "organizing" the "entire file." *See* Itemization of Records at 4–10.[5] And counsel billed a cumulative 3.9 hours for time that he spent re-reading the Complaint that he filed on behalf of the Center. The Complaint is only four pages long. *See generally* Compl. He also billed 1.5 hours for "CIS is confused? study of file and requests." Itemization of Records at 3. This is unreasonable. The agency should not be billed for counsel's reading and re-reading of his own pleadings and FOIA requests.

The Court need not go on. As these examples suggest, much of counsel's work was needless, duplicative, or inefficient. So the Court will reduce the hours the Center may recover.

---

[5] Many other entries include similar "review of file" descriptions that are lumped with other (vaguely described) tasks. So the Court cannot discern how much of this time was spent reviewing the case file generally or otherwise wasted. *See, e.g.*, Itemization of Records at 3 (".4 review of file; email to A Meltzer"); *id.* at 4 (".6 study of file; email to BP"); *id.* at 5 ("1.2 review of file; preparing JSR"); *id.* at 9 (".8 review of entire file; rereading #37").

**2.**

The agency also argues that the Center's records are insufficiently descriptive.  And inadequate records call for a reduction in compensable hours.  Vague billing records "make[] it impossible for the court to verify the reasonableness of the billings, either as to the necessity of the particular service or the amount of time expended on a given legal task."  *In re Sealed Case*, 890 F.2d 451, 455 (D.C. Cir. 1989) (per curiam).  Generic, one-line entries "are inadequate to meet a fee applicant's heavy obligation to present well-documented claims."  *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 971 (D.C. Cir. 2004).

A review of the Center's billing records show that they lack adequate detail.  Most of the entries lack any real description detailing the task counsel performed, or why he performed it.  For instance, counsel billed a cumulative 2.5 hours for "searching the Electronic Reading Room."  Searching for what?  Counsel also billed 1.8 hours for "research on technique and procedure."  Itemization of Hours at 6.  This entry is similarly impenetrable.

Consider next counsel's entries related to exhibits.  He billed: 0.8 hours for "creating PDFs"; 2.1 hours for "double checking exhibits and filing with court"; 2.1 hours "preparing exhibits"; and .7 hours "creating exhibits and double checking."  *Id.* at 4, 5, 8.  Preparing what exhibits?  And recall the many entries describing counsel's "review of the entire file."  The Court cannot imagine a less helpful description.

As these examples show, counsel's billing records teem with ambiguous entries.  This warrants an across-the-board reduction of the hours claimed.  *See Role Models Am., Inc.*, 353 F.3d at 973 ("A fixed reduction is appropriate given the large number of entries that suffer from one or more of the deficiencies we have described.").

The Court will thus award fees for 60% of the claimed hours.  *Cf. id.* (awarding 50% of hours sought because of inadequate documentation, failure to justify number of hours claimed, and improper billing entries); *see also Okla. Aerotronics, Inc. v. United States*, 943 F.2d 1344, 1347 (D.C. Cir. 1991) (affirming district court's award of 60% of claimed hours over excessive billing).

## C.

Finally, consider the Center's request for fees spent preparing this fee motion.  Counsel allegedly spent 56.7 hours preparing its fee motion and reply, and it requests a total award of $45,044.  *See* Reply at 24.  Though "hours reasonably devoted to a request for fees are compensable, fees on fees must be reasonable, and not excessive."  *Urban Air Initiative*, 442 F. Supp. 3d at 326 (cleaned up).  Here too, the Center's request is unreasonable.

The Court has a duty to "scrutinize fees-on-fees to ensure that the total is reasonable and does not represent a windfall for the attorneys."  *Id.* at 327 (cleaned up).  Counsel spent 19.7 hours on its fees motion and 37.2 hours on the reply brief.  *See* Reply at 24.  It is unclear why the reply took almost twice as many hours as the application.  And in reply, he briefed his eligibility and entitlement to fees again, even though the agency did not contest this in its opposition.  *See id.* at 19–21.

The Center's fees-on-fees request is also equivalent to nearly 30% of the claimed total cost of this litigation.  Such an award would be an "unsupportable windfall."  *Urban Air Initiative*, 442 F. Supp. 3d at 327.  The Court will thus award $10,000 in fees-on-fees.  *Cf. id.* (awarding less than 30% of requested fees-on-fees where request was nearly 30% of claimed total litigation costs and reply brief took almost as many hours as application).

\* \* \*

The following chart summarizes the Court's hours and rate adjustments as discussed above:

| Time Period[6] | Plaintiff's Hours | Court's Adjusted Hours (60%) | Fitzpatrick Matrix Rate | Court's Adjusted Rate (80%) | Fees Earned |
|---|---|---|---|---|---|
| 2020 | 76.8 | 46.08 | $731 | $584.80 | $26,947.58 |
| 2021 | 150.1 | 90.06 | $736 | $588.80 | $53,345.28 |
| 2022 | 42 | 25.2 | $784[7] | $627.20 | $15,805.44 |
| Fees-on-fees | -- | -- | -- | -- | $10,000.00 |
| Total | | | | | $106,098.00 |

All told, the Center is entitled to $106,098 in fees. And the Court will grant the Center's request for costs of $402, which the agency does not specifically oppose.

## IV.

For these reasons, the Court will grant in part and deny in part the Center's Motion for Attorneys' Fees and Costs. A separate Order will issue today.

Dated: May 16, 2023                                   TREVOR N. McFADDEN, U.S.D.J.

---

[6] The Center asserts without citation that it should be compensated for all hours at the prevailing market rate because of delay in payment. The Court disagrees. *See N.W. Coal. for Alts. to Pesticides v. Browner*, 965 F. Supp. 59, 66 (D.D.C. 1997) ("Attorneys' fees awarded against the United States government must be based on the prevailing market rate at the time the services were performed, rather than rates current at the time of the award.").

[7] The Fitzpatrick Matrix has not been updated for fiscal year 2022. The Court arrives at this figure by adjusting the 2021 rate for inflation based on the legal services index of the Consumer Price Index. *See* Fitzpatrick Matrix Explanatory Notes ¶ 12.